AUG 27 2026 AM11:53
FILED - USDC - FLMD - TPA

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF FLORIDA

TAMPA DIVISION

EFE MILLER OGUDUCU,
Plaintiff,

v. Case No. 8:26-cv-2518-JLB-CPT

SELECT PORTFOLIO SERVICING, INC.,
Defendant.

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff Efe Miller Oguducu ("Plaintiff"), proceeding pro se, brings this action against Defendant Select Portfolio Servicing, Inc. ("SPS" or "Defendant") and alleges as follows:

## I. NATURE OF THE ACTION

1. This action arises from Defendant's servicing of Plaintiff's residential mortgage loan secured by property located at 4098 Beach Drive SE, St. Petersburg, Florida 33705.
2. During its servicing of the mortgage loan, Defendant maintained inaccurate account information, failed to respond to qualified written requests in a timely manner, communicated materially inconsistent mortgage balances, failed to properly investigate and correct servicing disputes, and furnished inaccurate information regarding Plaintiff's mortgage account to consumer reporting agencies.
3. Plaintiff disputed SPS's credit reporting through TransUnion on at least three occasions: November 5, 2024; October 22, 2025; and November 5, 2025.
4. Plaintiff alleges that SPS failed to conduct a reasonable investigation and/or failed to fully correct inaccurate or materially misleading mortgage-account information following notice of those disputes.
5. On or about June 11, 2025, SPS provided a written communication to Plaintiff and the Florida Office of the Attorney General in which SPS acknowledged an error relating to information reported concerning Plaintiff's mortgage account.
6. Plaintiff further alleges that during the servicing relationship, SPS failed to properly resolve written disputes concerning mortgage-account balances, payment application, fees, charges, insurance-related activity, and other servicing issues.

TPA 74799
$405

7. The property was sold under duress and the mortgage obligation was paid in full in or about November 2025.
8. Plaintiff's payoff documentation did not separately itemize a lender-placed flood-insurance premium, although the payoff documentation included an escrow-related amount.
9. Plaintiff subsequently discovered information indicating that forced lender-placed flood-insurance which was not approved previously and the coverage associated with the former mortgage account remained active for approximately eight months after the property was sold and the mortgage debt was satisfied.
10. Plaintiff seeks damages and other relief available under federal law for violations established by the evidence.
11. Plaintiff seeks damages for violations of the unfair debt collection practices act.

## II. DEFENDANT'S NOTICE AND PATTERN OF CONDUCT

12. Defendant has been in prior individual many civil actions including the one from **The United States Government** Civil No. 03-12219-DPW alleging failures to properly respond to borrower disputes and servicing inquiries similar to those at issue here.
13. These actions placed Defendant on notice of its statutory obligations and the unlawful nature of the conduct alleged herein.

## III. WILLFULLNESS

14. Despite such notice by the United States Government and many other cases alleging similar servicing failures, the defendant continued the same practices, demonstrating willful and reckless disregard for Plaintiff's federally protected rights.

## IV. REGULATORY ACTION BY THE US GOVERNMENT

15. Defendant's was knowledged of its statutory obligations and notice by the United States government to change its servicing and collection practices which they still failed to implement compliance systems to prevent further violations

## V. PARTIES

16. Plaintiff Efe Miller Oguducu is a natural person and consumer who presently resides in New York.
17. During the relevant period, Plaintiff owned the residential real property located at:

4098 Beach Drive SE
St. Petersburg, Florida 33705

18. Defendant Select Portfolio Servicing, Inc. is a corporation authorized to conduct business in Florida.
19. Defendant serviced Plaintiff's residential mortgage loan during the relevant period.
20. In that capacity, Defendant maintained Plaintiff's mortgage account, received and applied payments, calculated balances, administered escrow activity, communicated alleged amounts due, participated in insurance-related servicing, responded to borrower disputes, and furnished information regarding the account to consumer reporting agencies.

## VI. JURISDICTION AND VENUE

21. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because Plaintiff's claims arise under federal law, including the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605, and the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq.
22. This Court has jurisdiction over Plaintiff's RESPA claims under 12 U.S.C. § 2614.
23. This Court has jurisdiction over Plaintiff's FCRA claims under 15 U.S.C. § 1681p.
24. Venue is proper under 28 U.S.C. § 1391 because a substantial part of the events and omissions giving rise to this action occurred in this judicial district.

25. The residential property securing the mortgage was located at 4098 Beach Drive SE, St. Petersburg, Florida 33705, in Pinellas County, Florida where the Plaintiff lived as his primary residence.
26. Pinellas County is within the Tampa Division of the United States District Court for the Middle District of Florida.
27. Defendants has a corporate registered address at 1201 Hays Street, Tallahassee, FL 32301 with Florida with corporate filing number F97000001363

## VII. FACTUAL ALLEGATIONS

### A. Mortgage Account and Servicing Disputes

28. Defendant serviced Plaintiff's residential mortgage loan during the relevant period.
29. During that servicing relationship, Plaintiff identified what he believed were errors concerning the calculation and administration of the mortgage account.
30. Those disputed matters included, among other things:

a. application of mortgage payments;

b. calculation of the mortgage balance;

c. fees and other charges;

d. escrow activity;

e. insurance-related transactions;

f. forced lender-placed insurance;

g. hurricane-insurance proceeds;

h. delinquency information; and

i. information furnished to consumer reporting agencies.

j. failure to respond qualified written request in timely manner

31. Plaintiff repeatedly communicated these disputes to SPS.
32. Plaintiff sent written correspondence to SPS's offices in Utah on multiple occasions during 2024.
33. Plaintiff's records identify written communications on or about February 9, 2024; February 19, 2024; February 20, 2024; March 12, 2024; March 29, 2024; May 16, 2024; September 16, 2024; December 18, 2024; and additional dates reflected in Plaintiff's records.
34. Those communications identified Plaintiff and his mortgage account and described specific servicing matters Plaintiff believed were inaccurate or required investigation.
35. Plaintiff alleges that SPS received the communications.
36. To the extent particular correspondence constituted a Qualified Written Request, Notice of Error, or Request for Information under RESPA and Regulation X, Plaintiff alleges that SPS was required to respond in accordance with applicable federal servicing requirements.
37. Plaintiff will rely upon the correspondence, voice recordings, mailing records, SPS responses, periodic mortgage statements, and other account records to establish which communications triggered statutory servicing obligations.

**B. Materially Inconsistent Mortgage Balances**

38. Plaintiff repeatedly disputed Defendant's calculation of the amount allegedly owed on the mortgage account.

39. On or about April 18, 2025, Plaintiff communicated with SPS concerning the mortgage debt.
40. During that communication, SPS represented that approximately $40,000 was overdue.
41. Plaintiff alleges that contemporaneous account information reflected an alleged past-due amount of approximately $4,750.
42. Plaintiff therefore disputed SPS's representation concerning the amount owed.
43. On or about July 22, 2025, Plaintiff received another communication from SPS.
44. During that call, an SPS representative identified as "Maria," Employee ID No. 53421, represented that Plaintiff owed approximately $51,000.
45. Plaintiff alleges that SPS's materially different representations of approximately $4,750, $40,000, and $51,000 demonstrate substantial discrepancies in Defendant's calculation and communication of Plaintiff's mortgage debt.
46. Plaintiff repeatedly requested an accurate accounting and correction of any erroneous balance, charge, payment application, or other servicing information.

**C. Hurricane Insurance Proceeds**

47. Plaintiff's property sustained hurricane-related damage that resulted in an insurance claim.
48. Insurance proceeds associated with the covered loss were approximately $99,500.
49. Because SPS serviced the mortgage loan, SPS participated in administration and release of insurance proceeds relating to the mortgaged property.
50. Plaintiff alleges that SPS purposely delayed the release of insurance proceeds necessary to repair the property to take control of the asset.
51. Plaintiff alleges that an initial release occurred approximately sixteen days after the relevant request and consisted of approximately ten percent of the available insurance proceeds.
52. Plaintiff further alleges that an hurricane repair inspection required for a subsequent release of insurance proceeds was delayed for approximately twenty-six days following Plaintiff's request.
53. Plaintiff alleges that these delays impaired his ability to promptly repair and restore the property and cost him major financial loss.
54. Plaintiff raised insurance-servicing and account issues with SPS during the servicing relationship.

**D. TransUnion Disputes and Credit Reporting**

55. SPS furnished information regarding Plaintiff's mortgage account and payment history to TransUnion and/or other consumer reporting agencies.
56. Plaintiff believed that material information furnished by SPS concerning the mortgage account was inaccurate or incomplete.

57. Plaintiff disputed SPS's mortgage tradeline with TransUnion on November 5, 2024.
58. Plaintiff subsequently disputed SPS's mortgage tradeline with TransUnion on October 22, 2025.
59. Plaintiff again disputed SPS's mortgage tradeline with TransUnion on November 5, 2025.
60. The disputes concerned information furnished by SPS regarding Plaintiff's mortgage debt, payment history, account status, balance, delinquency, or related account information.
61. Pursuant to the FCRA dispute process, TransUnion was required to notify the furnisher of disputed information in connection with its reinvestigation.
62. Plaintiff alleges, upon information and belief and subject to confirmation through the TransUnion dispute results and discovery, that TransUnion transmitted Plaintiff's disputes concerning the SPS tradeline to SPS.
63. Following such notice, SPS was required to conduct a reasonable investigation of the disputed information, review information provided in connection with the dispute, report the results to TransUnion, and appropriately modify, delete, or block information determined to be inaccurate, incomplete, or unverifiable.
64. Plaintiff alleges that SPS failed to conduct a reasonable investigation and/or failed to fully correct inaccurate or materially misleading information concerning Plaintiff's mortgage account.
65. On or about June 11, 2025, SPS provided a written communication to Plaintiff and the Florida Office of the Attorney General concerning Plaintiff's mortgage account.
66. In that communication, SPS acknowledged that an error had occurred concerning information reported regarding Plaintiff's mortgage account.
67. Plaintiff alleges that this acknowledgment is evidence that information concerning his account previously furnished to consumer reporting agencies was inaccurate.
68. Plaintiff alleges that despite his disputes and SPS's knowledge of reporting problems, inaccurate or materially misleading information remained associated with his credit history and caused damage.
69. Plaintiff alleges that the inaccurate reporting impaired his credit reputation and ability to obtain credit and caused other actual damages to be established through admissible evidence.

**E. Sale, Mortgage Payoff, Escrow, and Flood Insurance**

70. Plaintiff due to defendants business practices pattern of conduct and willfulness under duress sold the property located at 4098 Beach Drive SE, St. Petersburg, Florida 33705 in or about November 2025.
71. The mortgage serviced by SPS was paid in full in connection with the sale.
72. SPS prepared and/or supplied information used to determine the final amount required to satisfy the mortgage obligation.

73. The payoff documentation did not separately identify a lender-placed flood-insurance premium as an individual payoff charge.
74. The payoff documentation did, however, contain an escrow-related amount.
75. After the property had been sold and the mortgage obligation satisfied, Plaintiff discovered information indicating that lender-placed flood-insurance coverage associated with the former mortgage account remained active for approximately eight additional months.
76. Because the payoff documentation did not separately itemize a flood-insurance premium, Plaintiff presently cannot determine from the payoff document alone whether any portion of the final escrow amount or other account activity represented a flood-insurance premium, insurance advance, or other insurance-related charge.
77. Plaintiff therefore disputes any insurance premium, advance, fee, or escrow amount charged to him after the mortgage debt was satisfied or included in the payoff without a proper basis.
78. Plaintiff seeks production of the complete escrow history, transaction history, insurance-payment history, invoices, premium payments, refunds, cancellations, credits, and final payoff calculations necessary to determine the disposition of all insurance-related funds.

**COUNT I**

**FAIR CREDIT REPORTING ACT**

**15 U.S.C. § 1681s-2(b)**

79. Plaintiff incorporates Paragraphs 12 through 22 and 50 through 64 as though fully set forth herein.
80. SPS furnished information concerning Plaintiff's mortgage account to TransUnion.
81. Plaintiff disputed SPS's furnishing of mortgage-account information with TransUnion on November 5, 2024, October 22, 2025, and November 5, 2025.
82. Plaintiff alleges that TransUnion provided notice of the applicable disputes to SPS pursuant to 15 U.S.C. § 1681i(a)(2).
83. Upon receiving such notice, SPS was required under 15 U.S.C. § 1681s-2(b) to conduct a reasonable investigation, review relevant information, report its results to TransUnion, and appropriately correct, delete, or block inaccurate, incomplete, or unverifiable information.
84. Plaintiff alleges that SPS failed to conduct a reasonable investigation and/or failed to fully correct materially inaccurate or incomplete information.
85. SPS's June 11, 2025 written acknowledgment concerning an error in its reporting provides additional evidence of inaccuracies affecting Plaintiff's account.
86. Plaintiff alleges that SPS's conduct was negligent and/or willful.

87. As a direct and proximate result, Plaintiff suffered actual damages including damage to his credit reputation, impairment of his ability to obtain credit, financial loss, and emotional distress associated with the inaccurate credit reporting.
88. Plaintiff seeks actual damages pursuant to 15 U.S.C. § 1681o for negligent noncompliance.
89. To the extent SPS's conduct was willful, Plaintiff seeks actual or statutory damages and punitive damages as authorized by 15 U.S.C. § 1681n.

**COUNT II**

**REAL ESTATE SETTLEMENT PROCEDURES ACT**

**12 U.S.C. § 2605(e)**

90. Plaintiff incorporates Paragraphs 12 through 49 as though fully set forth herein.
91. SPS was the servicer of Plaintiff's federally related mortgage loan.
92. Plaintiff sent multiple written communications to SPS identifying himself, identifying his mortgage account, and describing alleged servicing errors or requesting servicing information.
93. The disputes included payment application, account balances, fees, charges, insurance-related servicing, escrow activity, and other matters relating to servicing of Plaintiff's mortgage loan.
94. To the extent Plaintiff's communications satisfied the statutory and regulatory requirements applicable to Qualified Written Requests, Notices of Error, and/or Requests for Information, SPS was required to timely acknowledge and properly investigate those communications.
95. Plaintiff alleges that SPS failed with respect to one or more qualifying communications to properly investigate identified servicing errors, correct account information, provide requested servicing information, or adequately explain its determination.
96. Plaintiff alleges that SPS's failures caused actual damages, including out-of-pocket costs and other financial losses to be proven through documentary evidence.
97. Plaintiff seeks actual damages and any additional statutory damages authorized by 12 U.S.C. § 2605(f) upon proof of a pattern or practice of noncompliance.

**COUNT III**

**RESPA / REGULATION X — SERVICING AND ACCOUNTING ERRORS**

**12 U.S.C. § 2605; 12 C.F.R. § 1024.35**

98. Plaintiff incorporates Paragraphs 23 through 49 and 65 through 73 as though fully set forth herein.
99. Plaintiff repeatedly challenged servicing errors concerning the mortgage account, including account balances, payment application, fees, escrow activity, and insurance-related servicing.
100. Plaintiff alleges that SPS failed to reasonably investigate and correct one or more servicing errors after receiving qualifying notice.
101. Plaintiff further alleges that the mortgage loan was paid in full in November 2025.
102. Plaintiff's payoff documentation contained an escrow-related amount but did not separately itemize lender-placed flood-insurance premiums.
103. Plaintiff subsequently discovered that lender-placed flood-insurance coverage associated with the former mortgage account apparently remained active for approximately eight months after payoff.
104. Plaintiff disputes any premium, fee, advance, escrow debit, or other charge imposed upon him without a reasonable basis after satisfaction of the mortgage obligation.
105. Plaintiff seeks an accurate accounting of all insurance and escrow activity associated with the final payoff and any post-payoff transactions.
106. To the extent the evidence demonstrates that SPS imposed, retained, or failed to refund an insurance-related charge without a reasonable basis, Plaintiff alleges that such activity constituted a servicing error under applicable federal mortgage-servicing requirements.
107. Plaintiff seeks actual damages caused by any RESPA violation established by the evidence and the additional relief permitted under 12 U.S.C. § 2605(f).

**COUNT IV**

**VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT**

**15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(10), 1692f(1), and 1692k**

108. Plaintiff Efe Miller Oguducu ("Plaintiff") brings this Count against Defendant Select Portfolio Servicing, Inc. ("SPS" or "Defendant") for violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq.
109. The mortgage obligation at issue arose from Plaintiff's residential mortgage loan secured by Plaintiff's former residence located at **4098 Beach Drive SE, St. Petersburg, Florida 33705**.

110. The mortgage obligation was incurred primarily for personal, family, and household purposes and therefore constituted a "debt" within the meaning of 15 U.S.C. § 1692a(5).

111. During the relevant period, SPS communicated directly with Plaintiff for the purpose of obtaining payment of the alleged mortgage debt and represented to Plaintiff that amounts were past due and subject to collection and foreclosure activity.

112. At the time SPS obtained servicing and/or collection responsibility for Plaintiff's mortgage loan, the loan was already in default.

113. Subject to Paragraph 107 being factually correct, SPS was acting as a "debt collector" with respect to Plaintiff's allegedly defaulted mortgage debt within the meaning of 15 U.S.C. § 1692a(6).

**Repeated Collection Calls From Multiple and Non-Returnable Telephone Numbers**

114. On **September 18, 2025**, SPS placed a telephone call to Plaintiff from telephone number **(801) 594-6000** in connection with collection of the alleged mortgage debt.

115. During that communication, an SPS representative informed Plaintiff that Plaintiff was **"in foreclosure"** but that no foreclosure date had yet been set.

116. The communication was made while SPS was demanding and/or attempting to obtain payment of the alleged mortgage debt.

117. Plaintiff disputed SPS's characterization of the legal status of the account and requested information concerning the alleged foreclosure and the amount SPS claimed was due.

118. Plaintiff alleges that SPS's representations concerning foreclosure status must be measured against the actual judicial status of the mortgage and foreclosure proceedings existing on September 18, 2025.

119. Plaintiff will rely upon SPS's account records, foreclosure referral records, communications with foreclosure counsel, and applicable court records to establish the actual status of the mortgage on September 18, 2025.

120. During the relevant period, Defendant SPS and/or persons acting on its behalf repeatedly contacted Plaintiff in connection with collection of the alleged mortgage debt using **multiple different telephone numbers.**

121. A number of those incoming telephone numbers were identified by Plaintiff's telephone service and/or caller-identification system as **"Spam," "Spam Risk," or similar classifications** when the calls were received.

122. These calls were nevertheless debt-collection communications originating from or on behalf of SPS and concerned Plaintiff's mortgage account, alleged delinquency, alleged amounts due, foreclosure status, or demands for payment.

123. On multiple occasions, after receiving such calls, Plaintiff attempted to return the call using the same telephone number displayed on his caller identification.

124. When Plaintiff attempted to call certain numbers back, the calls either **immediately disconnected, failed to ring, or generated a recorded message indicating that the number was not in service, was invalid, did not accept incoming calls, or otherwise could not be used to reach SPS**.

125. For example, Plaintiff received collection-related calls from numbers including **(801) 594-6000, (888) 260-9876, (904) 722-7050**, and additional telephone numbers to be identified from Plaintiff's telephone records, plaintiff call recordings through discovery

126. Plaintiff alleges that SPS's use of numerous different telephone numbers, including numbers that appeared to be spam-classified or could not reasonably be used by Plaintiff to return the call, made it substantially more difficult for Plaintiff to identify, verify, document, and respond to Defendant's collection communications.

127. Plaintiff further alleges that this conduct occurred while SPS was communicating disputed amounts, alleged delinquency information, foreclosure-related representations, and demands for payment.

128. Plaintiff repeatedly disputed the debt and attempted to communicate with SPS concerning the accuracy of the amounts being demanded.

129. Plaintiff alleges that the repeated use of multiple telephone numbers, when considered together with the frequency and substance of Defendant's collection communications, forms part of the overall pattern of conduct through which SPS attempted to collect the disputed mortgage debt.

130. To the extent the evidence establishes that such calls were made repeatedly or continuously with the intent to annoy, abuse, or harass Plaintiff, Plaintiff alleges that such conduct violated **15 U.S.C. § 1692d and § 1692d(5)**.

131. To the extent SPS used misleading caller-identification practices, non-returnable telephone numbers, or other deceptive means in connection with its efforts to obtain payment of the disputed debt, Plaintiff alleges that such conduct further supports his claim under **15 U.S.C. § 1692e and § 1692e(10)**.

132. Plaintiff suffered anxiety, distress, difficulty communicating regarding the disputed debt, and additional time and expense attempting to identify and respond to Defendant's collection communications.

**October 3, 2025 False Payment-History Representation**

133. On **October 3, 2025**, Plaintiff participated in another telephone communication with SPS concerning collection of the mortgage debt.

134. The October 3, 2025 telephone communication was recorded.

135. During that communication, SPS represented to Plaintiff that Plaintiff had **not made a mortgage payment for approximately one year or twelve months**.

136. That representation was materially false due to hurricane damage forbearance period

137. Plaintiff had made mortgage payments during the period SPS represented that no payments had been made, as demonstrated by Plaintiff's payment history, bank records, SPS account history, and other servicing records.

138. The number and timing of Plaintiff's payments were material to the amount SPS claimed was delinquent and to the legal and collection status SPS attributed to Plaintiff's account.

139. SPS's representation that Plaintiff had made no mortgage payments for approximately twelve months materially misrepresented Plaintiff's payment history, the character and amount of the alleged delinquency, and the status of the mortgage debt.

140. On or about October 3, 2025, Plaintiff sent SPS written correspondence disputing the foreclosure-related representations and account information.

141. Plaintiff also informed SPS that he had accepted or was accepting an offer to sell the property and intended to satisfy the mortgage obligation through the sale.

142. SPS therefore had actual notice that Plaintiff disputed the amount and servicing status being represented and that Plaintiff was actively arranging to satisfy the mortgage.

**October 6, 2025 — $557,304.24 Collection Balance**

143. On **October 6, 2025**, Plaintiff participated in another recorded telephone communication with SPS concerning the mortgage debt.

144. During the October 6, 2025 communication, SPS represented that Plaintiff's mortgage-account balance was **$557,304.24**.

145. At or about the same time, SPS's own online mortgage-servicing platform reflected a **materially lower mortgage balance**.

146. SPS's account information also reflected an escrow balance of approximately **$24,566.29**.

147. Plaintiff disputed the $557,304.24 amount communicated by SPS because it was materially inconsistent with the balance contemporaneously displayed in SPS's own servicing system and with Plaintiff's account records.

148. Plaintiff alleges that SPS was attempting to induce Plaintiff to pay an amount greater than the amount Plaintiff actually owed.

149. Plaintiff alleges that the $557,304.24 representation materially overstated and/or inaccurately stated the amount of Plaintiff's mortgage obligation.

150. The October 6, 2025 telephone recording preserves SPS's representation concerning the amount of the alleged debt.

151. Plaintiff will further rely upon SPS's online account records, mortgage statements, payment history, escrow ledger, transaction history, payoff calculations, and other servicing records to establish the precise amount that SPS was legally entitled to collect on October 6, 2025.

**Foreclosure and Payoff Communications**

152. By October 2025, SPS knew that Plaintiff disputed the amounts SPS claimed were due.

153. SPS also knew that Plaintiff was actively selling the property and intended to satisfy the mortgage from the sale proceeds.

154. On or about **October 6, 2025**, after Plaintiff had advised SPS of the pending sale, Plaintiff received a foreclosure-related communication from attorneys acting in connection with SPS's servicing and/or collection of the mortgage obligation.

155. Plaintiff does not allege that continuation of lawful foreclosure activity was unlawful merely because Plaintiff intended to sell the property.

156. Rather, Plaintiff alleges that the foreclosure-related communications form part of the relevant circumstances surrounding SPS's collection representations and the amounts SPS asserted were owed.

157. On or about **October 8, 2025**, SPS provided Plaintiff with another payoff calculation.

158. Plaintiff disputed the accuracy of that payoff calculation and submitted additional written correspondence to SPS concerning the alleged payoff error.

159. The repeated discrepancies between SPS's orally represented account balance, SPS's online servicing balance, and the payoff information supplied by SPS caused Plaintiff to dispute the amount SPS was legally entitled to collect.

**Satisfaction of Mortgage**

160. On **October 17, 2025**, Plaintiff completed the sale of the property located at 4098 Beach Drive SE, St. Petersburg, Florida 33705.

161. The mortgage serviced by SPS was paid and satisfied through the October 17, 2025 closing.

162. Accordingly, after October 17, 2025, Plaintiff no longer owed continuing monthly mortgage payments on the satisfied loan.

**False or Misleading Representations — 15 U.S.C. § 1692e**

163. The FDCPA prohibits a debt collector from using false, deceptive, or misleading representations or means in connection with collection of a consumer debt.

164. Section 1692e(2)(A) specifically prohibits the false representation of the character, amount, or legal status of a debt.

165. SPS violated and/or is liable under 15 U.S.C. § 1692e(2)(A) by representing on October 3, 2025 that Plaintiff had failed to make mortgage payments for approximately twelve months when Plaintiff's payment records demonstrated otherwise.

166. SPS further violated and/or is liable under § 1692e(2)(A) by representing on October 6, 2025 that Plaintiff's mortgage-account balance was **$557,304.24** when SPS's own contemporaneous servicing platform reflected a materially lower balance.

167. These representations concerned fundamental information about the alleged debt, including Plaintiff's payment history, the alleged delinquency, and the total amount SPS claimed Plaintiff was required to pay.

168. The representations were material because they were capable of influencing Plaintiff's decisions concerning payment of the alleged debt, sale of the property, satisfaction of the mortgage, and response to SPS's threatened or pending collection activity.

**Deceptive Collection Means — 15 U.S.C. § 1692e(10)**

169. Section 1692e(10) prohibits a debt collector from using any false representation or deceptive means to collect or attempt to collect a debt.

170. SPS's representation that Plaintiff had failed to make mortgage payments for approximately twelve months, despite account records reflecting payments during that period, constituted a false and/or deceptive means of attempting to collect the alleged mortgage debt.

171. SPS's representation of an alleged balance of **$557,304.24**, while SPS's own contemporaneous online system reflected a materially lower balance, likewise constituted a false and/or deceptive means of attempting to obtain payment.

172. Plaintiff alleges that these representations created an inflated and misleading impression concerning the amount and seriousness of the alleged mortgage delinquency.

**Collection of Unauthorized Amount — 15 U.S.C. § 1692f(1)**

173. Section 1692f prohibits unfair or unconscionable means of collecting or attempting to collect a debt.

174. Section 1692f(1) prohibits collection or attempted collection of any amount, including interest, fees, charges, or expenses incidental to the principal obligation, unless the amount is expressly authorized by the agreement creating the debt or otherwise permitted by law.

175. Plaintiff alleges that SPS attempted to collect amounts that exceeded the amount properly due under Plaintiff's mortgage account.

176. Plaintiff alleges that the discrepancy between the **$557,304.24** amount represented during the October 6, 2025 collection communication and the materially lower contemporaneous balance appearing in SPS's own account system included amounts that SPS was not entitled to demand from Plaintiff.

177. To the extent SPS's complete account ledger establishes that any portion of the amount demanded consisted of fees, charges, insurance advances, escrow amounts,

interest, or other sums not authorized by the mortgage documents or permitted by law, SPS's attempt to collect those amounts violated 15 U.S.C. § 1692f(1).

**DAMAGES**

178. As a direct and proximate result of Defendant's actionable conduct, Plaintiff alleges that he sustained damages including, where supported by the evidence:

a. financial losses associated with servicing errors;

b. improper fees or charges;

c. costs incurred attempting to investigate and correct Defendant's account errors;

d. financial losses caused by inaccurate credit reporting & cancelled contractors payment due to willfully delayed insurance payments

e. impairment of Plaintiff's ability to obtain credit;

f. increased borrowing costs;

g. damage to Plaintiff's credit reputation;

h. emotional distress attributable to actionable credit-reporting violations; debt collection practice, mortgage servicing practice and

i. any improper escrow or insurance amounts established through SPS's account records.

179. Plaintiff will establish the nature, amount, and causation of his damages through admissible documentary evidence and testimony.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff **Efe Miller Oguducu** respectfully requests that the Court enter judgment in his favor and against Defendant **Select Portfolio Servicing, Inc. ("SPS")**, and award Plaintiff the following relief:

**A. Actual and Compensatory Damages**

An award of all actual damages proximately caused by Defendant's violations of federal law, including, to the extent established by admissible evidence:

180. Financial losses resulting from inaccurate mortgage-account balances, servicing errors, and improper charges;

181. Any amounts Plaintiff paid in excess of the amount properly due on the mortgage obligation;

182. Any improper escrow, insurance, interest, fee, or other charge ultimately established through Defendant's account records;

183. Financial losses resulting from inaccurate or misleading credit reporting;

184. Loss of access to credit, denial of credit, increased borrowing costs, or other credit-related economic injury;

185. Costs and expenses reasonably incurred by Plaintiff in attempting to investigate, dispute, and correct Defendant's servicing and credit-reporting errors;

186. Property-related financial losses to the extent Plaintiff establishes that such losses were proximately caused by conduct for which damages are legally recoverable;

187. Emotional distress, humiliation, anxiety, damage to credit reputation, and related injuries to the extent recoverable under the particular federal cause of action and supported by competent evidence; and

188. All other actual damages proven at trial and legally attributable to Defendant's actionable conduct.

---

**B. Fair Credit Reporting Act — Willful Noncompliance**

Upon a finding that Defendant willfully failed to comply with the Fair Credit Reporting Act, Plaintiff requests the remedies authorized by **15 U.S.C. § 1681n**, including:

189. Actual damages sustained by Plaintiff as a result of Defendant's willful noncompliance, or statutory damages as permitted by 15 U.S.C. § 1681n(a)(1);

190. Punitive damages in an amount determined by the jury and permitted by the Court pursuant to **15 U.S.C. § 1681n(a)(2)**;

191. Costs of the action; and

192. Reasonable attorney's fees to the extent Plaintiff later incurs recoverable attorney's fees and such fees are authorized by law.

---

**C. Fair Credit Reporting Act — Negligent Noncompliance**

In the alternative, to the extent Defendant's violations are determined to have been negligent rather than willful, Plaintiff seeks:

193. Actual damages pursuant to **15 U.S.C. § 1681o**;

194. Costs of the action; and

195. Reasonable attorney's fees to the extent actually incurred and recoverable under applicable law.

---

**D. Real Estate Settlement Procedures Act**

For Defendant's violations of the Real Estate Settlement Procedures Act, including **12 U.S.C. § 2605**, Plaintiff requests:

196. All actual damages caused by each actionable failure to comply with RESPA;
197. Upon proof of a pattern or practice of noncompliance, additional statutory damages in the maximum amount authorized by **12 U.S.C. § 2605(f)(1)(B)**;
198. Costs of the action; and
199. Reasonable attorney's fees to the extent actually incurred and recoverable under applicable law.

---

**E. Fair Debt Collection Practices Act - Willful Noncompliance**

For Defendant's violations of the Fair Debt Collection Practices Act, including **15 U.S.C. §§ 1692d, 1692e, 1692e(2)(A), 1692e(10), and 1692f**, Plaintiff requests:

200. All actual damages caused by Defendant's actionable debt-collection conduct;
201. Additional statutory damages of up to **$1,000** pursuant to **15 U.S.C. § 1692k(a)(2)(A)**;
202. Costs of the action; and
203. Reasonable attorney's fees to the extent actually incurred and recoverable under applicable law.

---

**F. Aggregate Damages Demand**

Based upon the totality of Defendant's alleged conduct, the actual damages Plaintiff alleges he sustained, the alleged harm to Plaintiff's credit and financial affairs, and punitive damages sought for Defendant's alleged willful violations of the above Acts, Plaintiff demands judgment against Defendant in an aggregate amount of $10,000,000, or such amount as the jury and Court determine is supported by the evidence and authorized by law.

Plaintiff does not allege that any statutory damages provision standing alone authorizes recovery of $10,000,000. Rather, the aggregate demand includes all categories of actual and punitive damages legally available under the causes of action pleaded, subject to the statutory limitations applicable to each claim and Plaintiff's burden of proof at trial.

Plaintiff alleges that the substantial damages sought are warranted by Defendant's repeated and willful pattern of conduct, particularly because Defendant had previously been placed on notice by the United States Government regarding similar mortgage-servicing and consumer-protection violations, yet nevertheless continued engaging in substantially similar conduct with reckless disregard for Plaintiff's federally protected rights.

---

**G. Interest**

Plaintiff requests prejudgment interest and post-judgment interest to the extent permitted by federal law.

---

**H. Costs**

Plaintiff requests taxable costs and all other litigation costs recoverable under the statutes upon which judgment is entered.

---

**I. Other Relief**

Plaintiff requests such other and further relief as the Court determines to be just, proper, and authorized by law.

**PLAINTIFF'S MOTION TO SEAL**

Plaintiff respectfully requests leave to file this action, personal name, or appropriate portions of the record, under seal pursuant to Local Rule 1.11 because the filings contain highly sensitive personal financial information and because public disclosure of that information would significantly aggravate the severe anxiety and emotional distress Plaintiff alleges he has already suffered; alternatively, Plaintiff requests such narrowly tailored sealing or redaction as the Court deems appropriate.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all claims and issues for which a jury trial is available.

Respectfully submitted,

Dated: 8/20/2026

______________________________

Efe Miller Oguducu
Plaintiff, Pro Se
63 Wall Street, Apt. 1909
New York, New York 10005
Telephone: 424-202-9168
Email: efe.miller@yahoo.com